# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STEPHANIE LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| DENIS McDONOUGH, Secretary ) | |
| UNITED STATES DEPARTMENT OF ) | |
| VETERANS AFFAIRS, ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff, Stephanie Lewis, by and through her undersigned counsel, and files this Complaint for damages for her causes of action against Defendants Denis McDonough and the United States Department of Veterans Affairs. Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*

2. As this Complaint asserts federal causes of action arising under the laws of the United States, jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

3. Plaintiff was employed by the Defendant in Kansas City, Missouri. Pursuant to 28 U.S.C. § 139, venue properly lies in this judicial district in that the alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Western District of Missouri, specifically in Kansas City, Missouri, and the Defendant is a government employer who is subject to the jurisdiction of this Court.

## PARTIES

4. Plaintiff, Stephanie Lewis, is a United States citizen. She resides in the greater Kansas City area.

5. Plaintiff is an African American female who has participated in protected activity.

6. Defendant McDonough, in his capacity as Secretary of the VA, is located in Washington, D.C.

7. The United States of America and its Agency, United States Department of Veterans Affairs, Kansas City Veterans Administration Hospital (hereafter "KCVA") is located at 4801 Linwood Blvd., Kansas City, Missouri.

## ADMINISTRATIVE PROCEDURES

8. After initiating an informal administrative complaint on March 4, 2021, Plaintiff received her Notice of Right to File Formal Complaint on March 22, 2021. She timely filed her formal complaint on April 5, 2021. That administrative Complaint of Discrimination was assigned Case No. 2003-0589-2021102554.

9. Plaintiff's administrative Complaints of Discrimination alleged that she was discriminated against on the basis of her race and color.

10. Plaintiff has exhausted all administrative remedies in that on September 30, 2021, Defendant issued its Final Agency Decision on Plaintiff's claims. Plaintiff received that FAD within five days of its issuance.

11. Plaintiff timely filed this lawsuit within 90 days of the receipt of the Final Agency Decision.

12. All of Plaintiff's claims alleged in this Complaint were considered during the administrative investigation of her administrative Complaints of Discrimination and they

reasonably followed from the allegations contained in the administrative complaints of discrimination, reprisal, and retaliation.

13. Pursuant to 42 U.S.C. § 2000e-16(c), Plaintiff therefore invokes her right to bring this civil action in that she has satisfied all administrative and judicial prerequisites to the institution of this action.

**ALLEGATIONS COMMON TO ALL COUNTS**

14. Plaintiff is an African American with dark brown skin. She has worked at the Kansas City VA Medical Center for approximately four years as an Advanced Medical Support Assistant, GS-6.

15. During the course of her tenure at the Kansas City VA Medical Center, she has been subjected to discrimination and harassment based upon her race and color.

16. Her supervisor, Lori Groome, favored white employees over people of color in her choices for advancement, training opportunities, and other perquisites of Plaintiff's position.

17. On or about January 26, 2021, Plaintiff was not selected for the Lead Medical Support Assistant, GS-7 position under the vacancy announcement numbered CBSS-10968643-21BOS-AMR.2

18. Plaintiff was more highly qualified than the selected individual. Plaintiff has two college degrees while the individual selected does not. Plaintiff had significantly more experience than the person selected and Plaintiff had received awards and commendations for her work in the area for which she applied to be a lead.

19. Plaintiff provided all of the materials required for the job application while the individual selected did not provide the requisite number of job references and did not have the required time in service for the position for which she applied.

20. Plaintiff was told that she did not get the lead position because the individual selected outscored her on the Interview Selection process.

21. The Interview Selection process was flawed and contained significant irregularities that evidenced race discrimination and violation of the Agency's procedures for selection for promotion. Those irregularities included:

   a. Plaintiff was interviewed on two occasions. In the first interview, the panel was a diverse panel of four interviewers that included a white female, two light-skinned black females, and a brown male. In the second interview panel, Plaintiff was interviewed by two interviewers, one white female and one white male.

   b. During the first interview, the selectee scored lower than Plaintiff.

   c. During the second interview, the selectee scored higher than Plaintiff.

   d. Not only were the interview panel Caucasian, but they also had personal relationships with the selectee's parents. Ms. Victoria Malicoat was selected for the Lead position.

   e. The interview panel consisted of Jeff Hernbloom, the friend of Ms. Malicoat's stepfather. Ms. Malicoat's stepfather is John Wymore, a KCVA employee who has a personal relationship with Jeff Hernbloom. The second interviewer was Lindsay Goens. Ms. Goens works directly with Ann Michelle Konopasek-Morris, who is Victoria Malicoat's mother.

22. Following the interview, Ms. Lewis contacted her supervisor, Sharone Ince, and asked why she was not selected. Ms. Ince indicated that the panel scored Ms. Lewis low on the areas of Personal Mastery—Ability to organize work and function independently; and

Interpersonal Effectiveness—ability to communicate in writing. Both of these reasons are pretextual.

23. The lowered score on "Personal Mastery" created a pretextual reason for failing to promote Plaintiff. That it is pretextual can be shown in the following particulars:

   a. Plaintiff has received awards and been recognized for the outstanding work that she has presented while working independently in the clinics that she has covered;

   b. She has been told repeatedly that she is "strongest float" and that she was the "face" of the clinics;

   c. Plaintiff has worked independently in the various clinics and has been asked to train new MSAs on several occasions, which is the function of the lead;

   d. Plaintiff has received outstanding performance awards and received the Above and Beyond Award in 2018. She also received a written recommendation from Ann Konopasek-Morris commending her organizational skills and great communication;

   e. In 2019, she received the BOS employee of the month for her excellence in her treatment of patients and staff, along with her knowledge and understanding of scheduling;

   f. She was nominated for the Hematology/Oncology Award of excellence;

   g. She has independently run several clinics;

   h. The selectee has not received any of these awards and has not independently run the clinics nor does she have knowledge of the VETEXT system.

24. The lowered score on "Interpersonal Effectiveness" created a pretextual reason for failing to promote plaintiff. That it is pretextual can be shown in the following particulars:

a. Interpersonal Effectiveness concerns the ability to communicate in writing. During the interview, Plaintiff was not required to write.

b. Plaintiff has two college degrees that have required Composition 1 and 2 and public speaking; she has never been told anything except that her ability to communicate in writing was exemplary.

25. Ms. Malicote, the selectee, was given preferential treatment prior to the selection process. While the two black floats were required to work the clinics, leaving the office and being "the face of the clinics," Ms. Malicote was allowed to spend excessive time with the supervisor in her office instead of working the clinics as the position required.

26. Plaintiff's second line supervisor, Lori Groome, refused to speak to Plaintiff, instead speaking only to the Caucasian, Ms. Malicote.

27. Ms. Malicote was pre-selected for the position of Lead. Prior to the selection, Plaintiff and the other African American, Felicia Vanoy, were required to cover different clinics throughout the hospital while Ms. Malicoat remained in the office of the supervisor.

28. On November 19, Plaintiff was required to cover the Pulmonary and Cardiology clinics as well as check the patients out of the Cardiology because Ms. Malicoat remained in the supervisor's office, ignoring her required duties.

29. On December 4, 2020, Plaintiff emailed her supervisor to determine if the procedures had changed as Ms. Malicoat was covering the Hematology/Oncology clinic while remaining in the office of the supervisor. Plaintiff and Felicia Vanoy were required to report to the clinic in person.

30. On December 29, 2020, Plaintiff was assigned to cover all of Ms. Malicoat's clinics as well as her assigned clinics even though she was present at the job. Plaintiff was told that she

was the strongest float in the area, the face of clinics. But also, Ms. Malicoat had no knowledge of the pulmonary or sleep clinics necessitating Plaintiff's doubled workload.

31. Plaintiff discovered that while she was operating the clinics, the supervisor was training Ms. Malicoat on Lead duties. Plaintiff requested the opportunity to cover the Lead duties while her supervisor was on extended leave. During that time, she discovered that Ms. Malicoat had received training on Lead duties that were denied to Plaintiff.

32. When Plaintiff expressed her displeasure, she was pulled aside by Lori Groome, the second line supervisor, and told that the Shawnee Clinic would have a Lead position open and it was closer to Plaintiff's home. This statement established that the Agency was engaging in pre-selection of its employees.

33. Plaintiff has experienced an environment rife with racial hostility and discriminatory animus.

34. Plaintiff is aware that nurses with whom she works have publicly stated that they do not want any more blacks on their teams.

35. Likewise, Plaintiff and other women have been subjected to overt sexual discrimination and harassment. For example, some of the white males have been observed using their straws as phallic objects, suggestively moving them up and down in their drinks in sexual pantomime.

36. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

7

Case 4:21-cv-00944-DGK   Document 1   Filed 12/29/21   Page 7 of 11

## COUNT 1: RACE DISCRIMINATION AND SEX DISCRIMINATION
## DISPARATE TREATMENT

37. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–36.

38. Plaintiff, an African American female, is a member of a protected class.

39. She was qualified for the position she held at the KCVA and met her employer's legitimate performance expectations.

40. Plaintiff suffered adverse job actions when management engaged in the actions including but not limited to:

   a. Failing to promote Plaintiff to the position of Lead Medical Support Assistant, GS-7 position under the vacancy announcement numbered CBSS-10968643-21BOS-AMR.2;

   b. Experienced race-based harassment that changed the terms or conditions of her employment;

   c. Experienced sex-based harassment that changed the terms or conditions of her employment;

   d. Was treated differently from similarly situated white employees.

41. The Agency and Management Officials treated similarly situated Caucasian employees more favorably than they did Plaintiff.

42. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

## COUNT 2 HOSTILE ENVIRONMENT BASED ON RACE, COLOR AND SEX
## ALL DEFENDANTS

43. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–42.

44. During the course of Plaintiff's employment with the Defendant, Plaintiff experienced a hostile environment based upon her race, color, and national origin in that:

    a. Plaintiff was subjected to harassment;

    b. The harassment was unwelcome;

    c. The harassment was based upon Plaintiff's race;

    d. The harassment was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive;

    e. At the time the harassment occurred and as a result of it, Plaintiff believed the work environment to be hostile or abusive;

    f. Defendants knew or should have known of the harassment; and

    g. Defendants failed to take prompt, appropriate corrective action to end the harassment.

45. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

# COUNT 3: RETALIATION
## ALL DEFENDANTS

46. Plaintiff hereby incorporates by this reference each and every allegation found in paragraphs 1–45.

47. Plaintiff complained to Defendants her concerns that she was being discriminated against directly and through her EEO informal counseling as well as her later formal complaint.

48. Plaintiff reasonably believed that she was being harassed and/or discriminated against on the basis of race and sex or age.

49. Defendant engaged in adverse actions against the Plaintiff including but not limited to the following actions:

    a. Failing to promote Plaintiff to the position of Lead Medical Support Assistant, GS-7 position under the vacancy announcement numbered CBSS-10968643-21BOS-AMR.2;

    b. Engaging in race-based harassment that changed the terms or conditions of her employment;

    c. Engaging in sex-based harassment that changed the terms or conditions of her employment;

    d. Was treated differently from similarly situated white employees;

    e. Other events as set forth in the Statement of Facts.

50. Plaintiff's complaints of race- and sex-based harassment and/or discrimination were contributing and/or motivating factors in the adverse actions taken against Plaintiff.

51. As a direct and proximate result of the conduct of Defendants and the conduct of the supervisors and managers, Plaintiff suffered grievous injury and damage, including but not limited to past, present, and future lost wages, benefits, earnings and earning capacity, mental

10

Case 4:21-cv-00944-DGK   Document 1   Filed 12/29/21   Page 10 of 11

anguish, pain, humiliation, embarrassment, depression, anxiety, anger, physical manifestations of emotional distress and physical injury, and lost enjoyment of life.

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue judgment against the Defendants for all the damages that Plaintiff has incurred, including without limitation physical and personal injury, emotional distress, back pay, future pay, lost earnings, lost earning capacity, special damages, and all compensatory damages to which the Plaintiff is entitled;

2. Issue judgment against the Defendants for equitable or injunctive relief including returning Plaintiff to a position commensurate to that from which she was terminated;

3. Award Plaintiff her reasonable attorneys' fees, costs, and expenses;

4. Award to Plaintiff any and all such further relief as may be equitable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

*/s/ Rebecca M. Randles*
REBECCA M. RANDLES　　　　MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Kansas City, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com