**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-00944-CV-W-DGK |
| | ) | |
| DENIS McDONOUGH, SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**(*With Opposition to Defendant's Statement of Facts and Plaintiff's Statement of Additional Facts*)**

## I. The VA's statement of uncontroverted material facts[1]

1. Lewis—an African-American female who self-describes her color as "dark brown" began working at the Kansas City VA Medical Center ("KCVAMC") as an Advanced Medical Support Assistant on December 10, 2017. WRITTEN AFFIDAVIT OF STEPHANIE LEWIS, attached hereto as "Exhibit A."

**Uncontroverted.**

---

[1] The foregoing facts are accompanied by citations to exhibits in the record. FED. R. CIV. P. 56(c)(1)(A). In the case of lengthy exhibits, the VA cites to and provides as exhibits only "the relevant excerpts." W.D. MO. LOC. R. 56.1(d).

2. Beginning in November of 2020, Lewis' immediate supervisor was Sharone Ince, an African-American female who self-describes her color as "light brown." WRITTEN AFFIDAVIT OF SHARONE INCE, attached hereto as "Exhibit B."

**Uncontroverted.**

3. In 2020-21, Lewis second-line supervisor was the Chief of Health Administration Services at the KCVAMC, Lori Groom. WRITTEN AFFIDAVIT OF LORI GROOM, attached hereto as "Exhibit C."

**Uncontroverted.**

4. On November 18, 2020, the VA issued Vacancy Announcement CBSS-10968643-21-BOS-AMR seeking to hire a Lead Medical Support Assistant at the KCVAMC. JOB ANNOUNCEMENT, attached hereto as "Exhibit D."

**Uncontroverted.**

5. Sharon Ince was the VA's selecting official for the Advanced Medical Support Assistant position. Ex. B.

**Uncontroverted.**

6. Lewis submitted her resume for the Lead Medical Support Assistant as did Victoria Malicoat, a Caucasian female who like Lewis was an Advanced Medical Support

Assistant at the KCVAMC. STEPHANIE LEWIS RESUME, attached hereto as "Exhibit E," VICTORIA MALICOAT RESUME, attached hereto as "Exhibit F."

**Uncontroverted.**

7. In total, 28 individuals applied for the Lead Medical Support Assistant position and their resumes were initially scored by Lori Groom based on four factors, to wit: (1) demonstration of knowledge of VA guidelines and policies related to scheduling appointments

and consults, (2) supervisory experience, (3) experience managing data for the purpose of identifying opportunities to improve efficiency or customer service, and (4) interpersonal skills that would predict success in the position and ability to communicate effectively orally and in writing. Ex. C; APPLICANT RESUME RANKING, attached hereto as 'Exhibit G."

**Uncontroverted.**

8. After Lori Groom has scored the resumes of all of the 28 applicants, Victoria Malicoat ranked the highest, although Lewis also ranked highly (tied for sixth). Ex. G

**Uncontroverted.**

. 9. Sharone Ince thought that Victoria Malicoat and Lewis had "similar qualifications" and the two resumes each reflected relatively similar experience, to wit:

<u>STEPHANIE LEWIS</u>

* Advance Medical Support Assistant since December 2017
* Worked multiple jobs between 2013 and 2017 including as a Certified Nursing Assistant [Care Haven Homes and Life Care Center], billing representative [VA], admitting representative [St. Luke's Cushing Hospital], and information associate [St. Luke's Cushing Hospital]
* 2012 bachelor's degree in psychology [Saint Mary's]

<u>VICTORIA MALICOAT</u>

* Advance Medical Support Assistant since May 2019
* Worked multiple jobs between 2015 and 2020 including a four-year stint as an administrative and office manager [Target Optical], real estate leasing agent [Northpoint Development], and laboratory assistant [Park University]
* Three years into obtaining a double bachelor's degree in biology and chemistry with a then estimated graduation date of May 2022 [Park University]

Ex. B; Ex. E; Ex. F.

**Controverted. As for the summary of experience, Defendant has left out significant education and experience that supports Lewis's claims that she was more highly qualified. *See Plaintiff's Statements of Fact. See also* (Ex. 1, Lewis Resume; Ex. 2, Malicoat Resume).**

10. Following the initial scoring of the resumes, the applicant list was sent to Sharone Ince who organized an interview panel consisting of herself and two other VA managers[2] – Jeff Hernbloom (Facilities Service Chief) and Lindsay Goens (Cardiology RN Care Coordinator) – to interview four applicants – Lewis, Victoria Malicoat, Aubrey Haynes, and Felicia Gates – for the Advanced Medical Support Assistant position. Ex. B; WRITTEN AFFIDAVIT OF JEFF HERNBLOOM, attached hereto as "Exhibit H," WRITTEN AFFIDAVIT OF LINDSAY GOENS, attached hereto as "Exhibit I."

**Controverted. Jeff Hernbloom testified that he was asked by Lori Groom, Sharone Ince's supervisor, to be part of the interview panels. [Ex. 4, Hernbloom Affidavit, Bates No. 000075]. Lindsey Goens indicated that she was asked to be part of the panel but does not identify who asked her. [Ex. 5, Goens Affidavit].**

11. In the ensuing interviews, the four applicants were all scored on their respective responses to the same seven questions. INTERVIEW QUESTIONS, attached hereto as "Exhibit J."

**Uncontroverted.**

12. At the conclusion of each interview, the interviewers independently assessed scores for an interviewed applicant based on the responses provided to the interview questions. Ex. B; Ex. H; Ex. I.

---

[2] Another VA manager, Cheryl Perkins (Nurse 3 Manager), was also initially a part of the interview panel assembled by Ms. Ince. During the interview process, however, Ms. Perkins had a medical conflict arise and she was not able to participate in all of the interviews (including Lewis' interview). Consequently, Ms. Ince discarded Ms. Perkins' interview scores so that all of the candidates could be evaluated based on the identical set of interviewers.

**To the extent this Statement of Fact is stating that each panel member had scoring sheets and scored the applicants separately, the response is uncontroverted.**

13. After the candidates had been interviewed, the resulting interview scores were tallied:

| | | **Applicant** | | | |
|---|---|---|---|---|---|
| | | Victoria Malicoat | Stephanie Lewis | Aubrey Haynes | Felicia Gates |
| Interviewer | Lindsay Goens | 29/30 | 28/30 | 16/30 | 23/30 |
| | Jeff Hernbloom | 29/30 | 26/30 | 15/30 | 30/30 |
| | Sharon Ince | 29/30 | 26/30 | 15/30 | 21/30 |
| | **TOTAL POINTS** | **87/90** | **80/90** | **46/90** | **74/90** |

INTERVIEW SCORING SHEETS, attached hereto as "Exhibit K."

**Uncontroverted.**

14. Sharone Ince ultimately was the selecting official for the Advanced Medical Support Assistant position and after reviewing the respective resume and interview scores, Ms. Ince selected Victoria Malicoat for the position. Ex. B; NOTIFICATION OF PERSONNEL ACTION, attached as "Exhibit P."

**Controverted. The evidence establishes that Ms. Malicoat received the position due to preselection as she was given remedial training to help her learn the systems that Ms. Lewis already knew; she was allowed to shadow and be with the supervisors to learn new skills while Ms. Lewis was required to cover her clinics while she was sitting with the supervisors learning the processes. Ms. Mailicoat's mother, a KCVA employee, was a friend and co-worker of one of the panel members. [Ex. 3, Lewis Affidavit]. Ms. Ince testified that she chose the panel members and she was the selecting official. [Ex. 6, Ince Aff. Bates No. 000057].**

15. While Ms. Ince found that Lewis had "similar qualifications" as Victoria

Malicoat, after reviewing the interview scores, Ms. Ince felt that Ms. Malicoat "conducted a stronger interview, as well as [demonstrated] qualities such as time management and courteous relationships in the workplace." Ex. B.

**Uncontroverted that Ms. Ince so testified.**

16. On January 25, 2021, Lewis received an email informing her that she had not been selected. NON-SELECTION EMAIL, attached hereto as "Exhibit L."

**Uncontroverted.**

17. On March 17, 2021, Ms. Ince additionally sent an email to Lewis stating:

> Ms. Lewis I would like to thank you for interviewing for the Lead MSA position. Although you were a strong candidate for the position, another candidate was stronger. The interview panel showed room for improvement in the competency areas of:
>
> 1. Personal Mastery: Ability to organize work & function independently.
>
> 2. Interpersonal Effectiveness: Ability to communicate in writing.

Ex. A.

**Uncontroverted that such an email was sent; controverted that the contents were true. See Plaintiff's Statements of Fact.**

18. On April 5, 2021, Lewis filed a formal administrative complaint of discrimination raising only a single discrete issue – her allegation that her non-selection for the Advanced Medical Support Assistant position was race and color discrimination. COMPLAINT OF DISCRIMINATION, attached hereto as "Exhibit M."

**Uncontroverted.**

19. On May 5, 2021, the VA notified Lewis and her attorney that it had received her written complaint of discrimination and had identified as the lone issue:

> Whether [Lewis] was discriminated against based on race (Black) and color (Dark) when on January 26, 2021, Sharone Ince (SI), Advanced Medical Support Assistant Supervisor, did not select her for the Lead Medical Support Assistant, GS-7, position, under vacancy announcement number CBSS-10968643-21BOS-AMR.

ISSUE ACCEPTANCE LETTER, attached hereto as "Exhibit N."

**Uncontroverted.**

20. The VA's issue acceptance letter further and specifically informed Lewis and her attorney that:

> If you or your client believe that the accepted claim is improperly formulated, incomplete, or incorrect, this office must receive written notice within 7 calendar days of receipt of this letter. Any written statement of disagreement will be included in the complaint file. We will assume that the claim is correctly stated if no statement indicating otherwise is received by this office within 7 calendar days.

Ex. N.

**Uncontroverted.**

21. Lewis never challenged or disputed the lone accepted issue, and it was only that single non-selection issue that was investigated and addressed administratively by the VA. FINAL AGENCY DECISION, attached hereto as "Exhibit O."

**Uncontroverted.**

## PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

### *Panel Makeup*

22. Two selectees were made from one announcement, announcement numbered CBSS-10968643-21-BOS-AMR. Plaintiff was interviewed on two occasions. In the first interview, the selectee was Natalie Dixon with Plaintiff the next runner up. In the second interview, Virginia Malicoat was selected. (Ex. 3, Lewis Affidavit Bates No. 000045-54).

23. Avis Watson-McCloud made the selection of Natalie Dixon using a diverse interview panel in interviews conducted face to face. (Ex. 3, Lewis Affidavit Bates No. 000045-54).

24. In the first interview panel, Plaintiff scored more highly than Virginia Malicoat in the interviewing process. (Ex. 3, Lewis Affidavit Bates No. 000048).

25. In the first interview panel, Ms. Lewis was only one point behind the selectee in the interview process. When she asked Ms. Watson-McCloud why she had been passed over, Ms. Watson-McCloud explained that the person chosen at Lead in the Honor Annex had worked in that department and was knowledgeable about all of the clinics at Honor Annex. (Ex. 3, Lewis Affidavit Bates No. 000048).

26. The second interview process included only two on the interview panel, both of whom were white and had connections to Virginia Malicoat. (Ex. 3, Lewis Affidavit Bates No. 000051). In that process, Jeff Hernbloom was one of the interviewers. He works with John Wymore, Virginia Malicoat's stepfather while Lindsey Goens directly works with Ann Michelle Konopasek-Morris, who is Victoria Malicoat's mother. (Ex. 3, Lewis Affidavit, Bates No. 000051).

27. No one from HR chose the best qualified, reviewed the resumes or provided the interview questions. HR gave no guidance with respect to the screening and interview process. [Ex. 6, Ince Affidavit Bates No. 000058].

28. Lori Groom testified that she reviewed the resumes and ranked them to determine who would get interviews. (Ex. 7, Groom Affidavit; Ex. 8, Applicant Resume Ranking; *see also Defendant's Statement of Fact, No. 7* [hereafter DSOF]); Ms. Ince provided the questions to be answered during the interviews. [Ex. 5, Goens Affidavit, Bates No. 000081]. She testified that she chose the interview panel. [Ex. 6, Ince Affidavit]. Jeff Hernbloom testified that he was asked to be on the interview panel by Lori Groom. [Ex. 4, Hernbloom Affidavit Bates No. 000075]. Ms. Ince sat in on the interviews, scored the interviewees and was a selecting official. [Ex. 6, Ince Affidavit Bates No. 000057; DSOF 14].

29. The interview panel did not meet the requirements of VA policy, which requires that those interviewing must be familiar with the position being filled. [Ex. 10, Collective Bargaining Agreement [CBA] Art. 23].

30. Jeff Hernbloom was the facilities service chief and did not have any experience regarding the work requirements of a lead MSA. (Ex. 4, Hernbloom Affidavit; Ex. 3, Lewis Affidavit).

31. Plaintiff believes the all-white, hand selected panel who all had connections to Virginia Malicoat and her family shows pre-selection that violates VA policy and evidences discrimination. [Ex. 3, Lewis Affidavit]. *See also* 5 U.S.C. 2301(b)(1); 5 U.S.C. 2302 (b)(6).

*Evidence of Differential Treatment/Pre-Selection*

32. On March 17, 2021, Ms. Lewis received an email from Sharone Ince indicating she had not gotten the position. The email stated: "Ms. Lewis I would like to thank you for interviewing for the Lead MSA position. Although you were a strong candidate for the position,

another candidate was stronger. The interview panel showed room for improvement in the competency ares of: 1. Personal Mastery: Ability to organize work and function independently. 2. Interpersonal effectiveness: Ability to communicate in writing. [Ex. 3, Lewis Aff. Bates 000047].

33. In addition to this reason, Sharone Ince testified that Ms. Lewis needed work on "courteous relationships." [Ex. 6, Ince Affidavit].

34. Ms. Lewis believes these are false and therefore pretextual. [Ex. 3, Lewis Affidavit].

35. During the interview process, Ms. Lewis was not asked to communicate in writing. She has two college degrees and has taken college level courses in written communication and public speaking. No writing assessment was required at the interview so there was no way the interview panel could have assessed her ability to communicate in writing. (Ex. 3, Lewis Aff. Bates 00052).

36. As for her ability to organize work and function independently, Ms. Lewis is fully capable of working independently and received an award in 2018 for that skillset. In 2018, she was invited to have lunch with upper management for her outstanding performance while being an employee for only three months. She also received the *Above and Beyond* Award in 2018. (Ex. 3, Lewis Aff. 000047).

37. In 2019, Ms. Lewis received a recommendation letter from Silver Clinic Nurse Manager stating: "Ms. Lewis organizational skills and great communication with both the staff and patients, every day, she ensures all veterans are being taken care." (Ex. 9, Report of Investigation [ROI] 000047).

38. In 2019, Ms. Lewis received BOS Employee of the Month, nominated by a Nurse Practitioner in Wound Clinic. In that award referral, she wrote, "Stephanie serves as a role

model to her peers by the way she treats patients and staff, along with her knowledge and understanding of WC scheduling." (Ex. 3, Lewis Affidavit Bates No. 000047).

39. In 2021, Ms. Lewis was nominated by the Nurse Manager for Hematology/Oncology for the Award of Excellence, showing that Plaintiff knew how to run a clinic independently. (Ex. 3, Lewis Affidavit Bates No. 000047).

40. Awards are part of the record to be reviewed when making a selection for a position. (Ex. 10, Collective Bargaining Agreement [CBA] Art. 23).

41. Ms. Lewis reached out to all three supervisors to learn what she needed to improve and to discuss why she had not been selected. Ms. Groom told Ms. Lewis that the reason her panel was made up solely of Caucasian interviewers was because no one responded to her email. (Ex. 3, Lewis Aff. Bates No. 000048).

42. That reason does not correspond with the testimony of Jeff Hernbloom who testified he had been asked by Lori Groom to be on the panel. (Ex. 4, Hernbloom Affidavit, Bates No. 000075). It also contradicts the testimony of Sharone Ince who testified she organized the interview panel as she did to "provide a variety in areas of work, without bias." (Ex. 6, Ince Affidavit Bates No. 000057).

43. Ms. Lewis also reached out to Ms. Ince seeking information as to why she was not chosen. Ms. Ince responded with the email set forth in Paragraph 32 but never provided a justification as to why Ms. Lewis was not selected for the position. (Ex. 3, Lewis Aff. Bates No. 000048).

44. Ms. Lewis sought a meeting with Groom and Ince but Ms. Ince did not attend the meeting to discuss why she was not selected. (Ex. 3, Lewis Aff. Bates No. 000048).

45. Ms. Lewis also reached out to Avis Watson-McCloud. Ms. McCloud did not understand why Ms. Lewis was not chosen. (Ex. 3, Lewis Aff. Bates No. 000048).

46. Ms. McCloud had chosen Natalie Dixon based on her knowledge of the Honor Annex clinics; Ms. Lewis had been working the Clinics at Linwood and had the most knowledge base of those. (Ex. 3, Lewis Affidavit Bates No. 000048).

47. Ms. Lewis reached out to Human Resources regarding her non-selection and asked about the interview scores. She was told that she met minimum qualification requirements but was not selected; Victoria Malicoat was selected. That is all the information she received. (Ex. 3, Lewis Affidavit Bates No. 000049).

48. Ms. Lewis also reached out to the EEO Program Director, Ms. Lesley Andrews. She stated that she wanted to file a complaint of discrimination based on race and color but never received a response from Ms. Andrews. She reached out to Ms. Andrews on February 25, March 1 and March 5, 2021 but never received any responses. (Ex. 3, Lewis Aff. Bats No. 000049).

49. During the time that Ms. Lewis and Ms. Malicoat worked together, Ms. Lewis observed Ms. Malicoat (Caucasian female) being treated more favorably than she. (Ex. 3, Lewis Aff. Bates No. 0000-49).

50. Ms. Malicoat had been shown favoritism causing her to be pre-selected for the Lead position. The team had three "floats," Victoria Malicoat, Felicia Vanoy and Ms. Lewis. Ms. Vanoy and Ms. Lewis were required to cover all of the clinics throughout the hospital while Ms. Malicoat remained in the office with the supervisor. (Ex. 3, Lewis Aff. Bates No. 000049).

51. On November 19, 2020, Plaintiff was required to cover the Pulmonary anc Cardiology clinics and check out patients in cardiology due to Ms. Malicoat remaining in the office with the supervisor. This kind of activity occurred regularly. (Ex. 3, Lewis Aff. Bates No. 000050).


Case 4:21-cv-00944-DGK Document 34 Filed 11/13/23 Page 12 of 17

52. Because of that differential treatment, Ms. Lewis emailed Ms. Ince to find out if the process for coving clinics had changed due to the fact that Ms. Malicoat was covering the Hematology/Oncology clinic while remaining in the office. Ms. Lewis had previously covered that clinic and she had been required to complete her duties by reporting to the clinic in person versus remaining in the office as Ms. Malicoat had been doing. (Ex. 3, Lewis Affidavit Bates No. 000050).

53. On December 29, 2020, Ms. Lewis verbally spoke with Ms. Ince about being required to cover Ms. Malicoat's assigned clinics as well as her own. (Ex. 3, Lewis Affidavit Bates No. 000050).

54. Ms. Ince told Plaintiff that she was her strongest float; she is the face of the clinics and that Ms. Lewis knew all of the clinics. (Ex. 3, Lewis Affidavit Bates No. 000050).

55. Ms. Lewis was required to cover all of the clinics because Ms. Malicoat was not knowledgeable regarding the workings of the Pulmonary clinic and the sleep clinic. (Ex. 3, Bates No. 000050).

56. While Ms. Lewis was covering all of the clinics, Ms. Ince was training Ms. Malicoat to be the Lead. (Ex. 3, Lewis Affidavit Bates No. 000050).

57. Ms. Lewis discovered that Ince was training Malicoat when Ms. Ince took a two week absence in January 2020. Ms. Lewis had been told she would be stepping into the acting Lead duties but discovered that Ms. Malicoat had been trained on them. (Ex. 3, Lewis Affidavit Bates No. 000050).

58. During Ms. Ince's absence, Plaintiff and Ms. Malicoat were acting leads. However, during that time, Ms. Malicoat was training Rosanna White, another MSA, to be a float. (Ex. 3, Lewis Aff. Bates No. 000050).

59. No vacancy had been announced for another float MSA. It was clear that Ms. Malicoat was training Ms. White as a form of pre-selection for the anticipated but not announced float position. (Ex. 3, Lewis Aff. Bates No. 000050).

60. Ms. Lewis was required to perform additional duties such as the training MSAs on WC and Tele-Sleep clinics and another on cardiology consults. Ms. Malicoat could not do these trainings as she had no knowledge about the sleep clinic or telehealth. Ms. Lewis trained a third MSA on the Hematology/Oncology clinic because Ms. Malicoat was absent. (Ex. 3, Lewis Aff. Bates No. 000050).

61. On January 13, 2021, Supervisor Lori Groom pulled Plaintiff aside and told her that the Shawnee clinic was going to have a Lead position open. After the conversation with Lori Groom, Plaintiff understood that pre-selection of a Caucasian female would be taking place for the Lead position on the vacancy announcement. (Ex. 3, Lewis Aff. Bates No. 000050).

62. Later that same month, Ms. Malicoat made it clear that she did not know how to do VETEXT, which Plaintiff knew well. Ms. Ince sent Ms. Malicoat to training again and required all of the MSAs to go to refresher training on VETEXT. (Ex. 3, Lewis Aff. Bates No. 000051).

63. On January 21, 2021, Ms. Lewis received an email from Ms. Ince requesting five references before her scheduled interview that day. (Ex. 3, Lewis Aff. Bates No. 000051). Ms. Lewis sent them to supervisor Ince immediately. (Ex. 3, Lewis Aff. Bates No. 000051).

64. Ms. Malicoat did not have and was not required to provide five references. (Ex. 3, Lewis Aff. Bates No. 000051).

65. Ms. Lewis has been at the KCVA longer than Ms. Malicoat. She was also more well versed on all of the clinics. (Ex. 3, Lewis Aff. Bates No. 000052).

66. Those had been the factors that caused Ms. Watson – McCloud to choose Natalie Dixon over Plaintiff on the first set of interviews. (Ex. 3, Lewis Aff. Bates No. 000052).

67. Prior to the interview, it had been openly discussed in the department that Victoria Malacoat was to be selected for the Lead MSA position on the Linwood campus. (Ex. 3, Lewis Aff. Bates No. 000052). Those discussions also indicated that Ms. Lewis would be forced to take a position at another facility. (Ex. 3, Lewis Aff. Bates No. 000052).

68. The makeup of the interview panel violated the policies regarding how interviews should be conducted. David Isaacks, the KCVA director, sent out emails about diversity and how interviews should be diverse. (Ex. 3, Lewis Aff. Bates No. 000053).

69. During Plaintiff's time as acting lead at the KCVA, Ms. Lewis was in charge of four clinics. Ms. Malicoat was in charge of only two due to her lack of knowledge. (Ex. 3, Lewis Aff. Bates No. 000053).

70. Supervisor Lori Groom would speak to Ms. Malicoat and discuss her concerns with Ms. Malicoat, but would not have those conversations with Ms. Lewis. (Ex. 3, Lewis Aff. Bates No. 000053).

71. During two weeks acting as lead, Ms. Malicoat was gone for four days causing Plaintiff to cover the entire team and clinics alone. (Ex. 3, Lewis Aff. Bates No. 000053).

72. Despite Ms. Lewis's demonstrably greater experience, Ms. Malicoat was given the lead position. (Ex. 3, Lewis Aff. Bates No. 000053).

73. Ms. Malicoat had only two years experience in the VA system. Ms. Lewis had been at the KCVA since 2018 and before that had worked at the Leavenworth VA. (Ex. 3, Lewis Aff. Bates No. 000053).

74. Ms. Lewis had a bachelor's degree at the time while Ms. Malicoat had hours toward her bachelor's but no degree. (Ex. 3, Lewis Aff. Bates No. 000053).

75. Despite these differences in qualifications, Ms. Malicoat was selected for the position. (Ex. 3, Lewis Aff. Bates No. 000053).

Respectfully submitted,

*<u>/s/ Rebecca M. Randles</u>*
REBECCA M. RANDLES MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Gladstone, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

and

*<u>/s/ Daniel A. Thomas</u>*
HUMPHREY, FARRINGTON & McCLAIN, P.C.
Chelsea McClain Pierce #61471
Daniel A. Thomas #52030
Michael S. Kilgore #44149
221W Lexington, Suite 400
Independence, Missouri 64050
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
cmp@hfmlegal.com
dat@hfmlegal.com
msk@hfmlegal.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of November, 2023, I electronically filed a true and correct copy of this document with the Clerk of the Court for the United States District Court, Western District of Missouri, by using the federal eFiling System. Participants in the case who are registered users will be served by the federal eFiling System.

*/s/ Rebecca M. Randles*
Attorney for Plaintiff