**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-00944-CV-W-DGK |
| | ) | |
| DENIS McDONOUGH, SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now Plaintiff, Stephanie Lewis, by and through her attorney of record, and hereby sets forth her Suggestions in Opposition to Defendant's Motion for Summary Judgment. Plaintiff has established facts sufficient to for a prima facie case of discrimination and therefore, defendant's Motion for Summary Judgment should be overruled.

## INTRODUCTION

### *Administrative Exhaustion*

After initiating an informal administrative complaint on March 4, 2021, Plaintiff received her Notice of Right to File Formal Complaint on March 22, 2021. She timely filed her formal complaint on April 5, 2021. That administrative Complaint of Discrimination was assigned Case No. 2003-0589-2021102554. Plaintiff's administrative Complaints of Discrimination alleged that she was discriminated against on the basis of her race and color.

Plaintiff has exhausted all administrative remedies in that on September 30, 2021, Defendant issued its Final Agency Decision on Plaintiff's claims. Plaintiff received that FAD

within five days of its issuance. Plaintiff timely filed this lawsuit within 90 days of the receipt of the Final Agency Decision.

All of Plaintiff's claims alleged in this Complaint reasonably followed from the allegations contained in the administrative complaints of discrimination, reprisal, and retaliation. Pursuant to 42 U.S.C. § 2000e-16(c), Plaintiff therefore invokee her right to bring this civil action in that she has satisfied all administrative and judicial prerequisites to the institution of this action.

Plaintiff is an African American with dark brown skin. She has worked at the Kansas City VA Medical Center for approximately four years as an Advanced Medical Support Assistant, GS-6. During the course of her tenure at the Kansas City VA Medical Center, she has been subjected to discrimination and harassment based upon her race and color. Her supervisors favored white employees over people of color in her choices for advancement, training opportunities, and other perquisites of Plaintiff's position, particularly Victoria Malicoat.

On or about January 26, 2021, Plaintiff was not selected for the Lead Medical Support Assistant, GS-7 position under the vacancy announcement numbered CBSS-10968643-21BOS-AMR.2 Plaintiff was more highly qualified than the selected individual. Plaintiff has two college degrees while the individual selected does not. Plaintiff had significantly more experience than the person selected and Plaintiff had received awards and commendations for her work in the area for which she applied to be a lead. Plaintiff provided all of the materials required for the job application while the individual selected did not provide the requisite number of job references and did not have the required time in service for the position for which she applied.

Plaintiff was told that she did not get the lead position because the individual selected outscored her on the Interview Selection process. The Interview Selection process was flawed and

contained significant irregularities that evidenced race discrimination and violation of the Agency's procedures for selection for promotion. Those irregularities included:

a. Plaintiff was interviewed on two occasions. In the first interview, the panel was a diverse panel of four interviewers that included a white female, two light-skinned black females, and a brown male. In the second interview panel, Plaintiff was interviewed by two interviewers, one white female and one white male.

b. During the first interview, the selectee scored lower than Plaintiff.

c. During the second interview, the selectee scored higher than Plaintiff.

d. Not only were the interview panel Caucasian, but they also had personal relationships with the selectee's parents. Ms. Victoria Malicoat was selected for the Lead position.

e. The interview panel consisted of Jeff Hernbloom, the friend of Ms. Malicoat's stepfather. Ms. Malicoat's stepfather is John Wymore, a KCVA employee who has a personal relationship with Jeff Hernbloom. The second interviewer was Lindsay Goens. Ms. Goens works directly with Ann Michelle Konopasek-Morris, who is Victoria Malicoat's mother.

Following the interview, Ms. Lewis contacted her supervisor, Sharone Ince, and asked why she was not selected. Ms. Ince indicated that the panel scored Ms. Lewis low on the areas of Personal Mastery—Ability to organize work and function independently; and Interpersonal Effectiveness—ability to communicate in writing. Both of these reasons are pretextual. The lowered score on "Personal Mastery" created a pretextual reason for failing to promote Plaintiff. That it is pretextual can be shown in the following particulars:

a. Plaintiff has received awards and been recognized for the outstanding work that she has presented while working independently in the clinics that she has covered;

b. She has been told repeatedly that she is "strongest float" and that she was the "face" of the clinics;

c. Plaintiff has worked independently in the various clinics and has been asked to train new MSAs on several occasions, which is the function of the lead;

d. Plaintiff has received outstanding performance awards and received the Above and Beyond Award in 2018. She also received a written recommendation from Ann Konopasek-Morris commending her organizational skills and great communication;

e. In 2019, she received the BOS employee of the month for her excellence in her treatment of patients and staff, along with her knowledge and understanding of scheduling;

f. She was nominated for the Hematology/Oncology Award of excellence;

g. She has independently run several clinics;

h. The selectee has not received any of these awards and has not independently run the clinics nor does she have knowledge of the VETEXT system.

The lowered score on "Interpersonal Effectiveness" created a pretextual reason for failing to promote plaintiff. That it is pretextual can be shown in the following particulars:

a. Interpersonal Effectiveness concerns the ability to communicate in writing. During the interview, Plaintiff was not required to write.

b. Plaintiff has two college degrees that have required Composition 1 and 2 and public speaking; she has never been told anything except that her ability to communicate in writing was exemplary.

Ms. Malicoat, the selectee, was given preferential treatment prior to the selection process. While the two black floats were required to work the clinics, leaving the office and being "the face of the clinics," Ms. Malicoat was allowed to spend excessive time with the supervisor in her office instead of working the clinics as the position required. Plaintiff's second line supervisor, Lori Groome, refused to speak to Plaintiff, instead speaking only to the Caucasian, Ms. Malicoat.

Ms. Malicoat was pre-selected for the position of Lead. Prior to the selection, Plaintiff and the other African American, Felicia Vanoy, were required to cover different clinics throughout the hospital while Ms. Malicoat remained in the office of the supervisor. On November 19, Plaintiff was required to cover the Pulmonary and Cardiology clinics as well as check the patients out of the Cardiology because Ms. Malicoat remained in the supervisor's office, ignoring her required duties.

On December 4, 2020, Plaintiff emailed her supervisor to determine if the procedures had changed as Ms. Malicoat was covering the Hematology/Oncology clinic while remaining in the office of the supervisor. Plaintiff and Felicia Vanoy were required to report to the clinic in person. On December 29, 2020, Plaintiff was assigned to cover all of Ms. Malicoat's clinics as well as her assigned clinics even though she was present at the job. Plaintiff was told that she was the strongest float in the area, the face of clinics. But also, Ms. Malicoat had no knowledge of the pulmonary or sleep clinics necessitating Plaintiff's doubled workload.

Plaintiff discovered that while she was operating the clinics, the supervisor was training Ms. Malicoat on Lead duties. Plaintiff requested the opportunity to cover the Lead duties while her supervisor was on extended leave. During that time, she discovered that Ms. Malicoat had received training on Lead duties that were denied to Plaintiff. When Plaintiff expressed her displeasure, she was pulled aside by Lori Groome, the second line supervisor, and told that the Shawnee Clinic would have a Lead position open and it was closer to Plaintiff's home. This statement established that the Agency was engaging in pre-selection of its employees.

As set forth in Plaintiff's Additional Statement of Facts, Plaintiff was subjected to ongoing treatment of a differential nature that culminated in Plaintiff's non-selection for the Lead MSA position at the Linwood complex.

## LEGAL ARGUMENT

### 1. Standard for Summary Judgment

***Standard of Review***

Summary judgment is a drastic measure that demands caution in its application. It is a means of testing in advance whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. *Presley v. Crow,* 2019 U.S.Dist. LEXIS 169276 (W.D. Okla. Sept. 30, 2019). In coming to that conclusion, "[w]e must view all facts in the light most favorable to the nonmoving party and give the nonmoving party the benefit of all reasonable inferences that can be drawn from those facts. *Widow v. Dist. # 111 Otoe County Sch.,* 147 F3d 726, 728 (8th Cir. 1998). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the

substantive law, it is essential to the proper disposition of the claim. *Id.* In this matter, Plaintiff has established that she was the victim of discrimination based upon her race and color.[1]

Even when the facts are not in dispute, summary judgment should be denied if competing inferences can be drawn from the undisputed facts on material issues. *Hunt v. Cromartie,* 526 U.S. 541 (1999). Thus, if the Agency's evidence is contradicted or comes from an interested witness, it cannot be credited unless it is favorable to the plaintiff. *Reeves,* 530 U.S. at 151, *quoting* 9A C. Wright and A. Miller, Federal Practice and Procedure, 2529 (2d Ed. 1995) at 300.

Here Plaintiff ahs established issues of fact regarding each element of his claims, creating a prima facie case. *Wilking v. County of Ramsey,* 153 F.3d 869, 873 (8th Cir. 1998). The burden imposed on a plaintiff at the prima facie stage is 'not onerous.'" *EEOC v. Horizon / CMS Healthcare Corp.,* 220 F.3d 1184, 1197 (10th Cir. 2000) *quoting Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). The required proof necessary to establish a prima facie case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994); *Young v. Warner Jenkinson,* 152 F.3d 1018, 1022 (8th Cir. 1998)(the prima facie burden is not so onerous as, nor should it be conflated with the ultimate issue of discriminatory action).

Because Plaintiff has established a prima facie case of discrimination, summary judgment should be overruled.

***Exhaustion of Remedies***

---

[1] Plaintiff also made allegations that she had been the victim of discrimination based on race *plus* color and / or sex as her immediate supervisor is a light-skinned black female. She also made allegations of sex discrimination based upon the harassment she experienced before her transfer out of the department. However, she did not raise the sex harassment claims at the administrative level and the witnesses upon which she relies have not tied that sexual harassment to her non-selection so they cannot be said to reasonably arise from the facts in her complaint. Plaintiff has therefore abandoned those claims.

The process for a Federal employee to bring claims of discrimination is onerous. Before bringing suit under Title VII, a plaintiff must timely exhaust her administrative remedies. *See* 42 U.S.C. § 2000e-16(c.). for a Federal employee, administrative exhaustion requires the employee to seek informal pre-complaint counseling "within 45 days of the allegedly discriminatory act" to try to informally resolve the matter and to limit subsequent formal EEO complaints to only the claims raised in the pre-complaint counseling or issues or claims like or related to issues to claims raised in pre-complaint counseling. *Miles v. Kerry,* 961 F.Supp.2d 272, 286 (D.C. D.C. 2013). Unlike agency exhaustion in other contexts the purposes of counseling and mediation are not to compile a record for judicial review but instead simply to afford the employee and the employing office an opportunity to explore and possibly resolve the employee's claims informally. *Blackmon-Malloy v. United States Capitol Police Bd.,* 575 F.3d 699, 711-12 (D.C. Cir. 2009). Where counseling produces sufficient information to enable the agency to investigate the claim, that purpose has been served.

In this matter, the EEO counseling report indicates that Plaintiff contacted the EEO counselor during the informal counseling period. The EEO counselor describes the claim as follows: "The Aggrieved Party (AP) Stephanie Lewis claimed she was discriminated by Responding Management Official's (RMO's) Sharone Ince and Lori Groom on the basis of Race – Black, Color – Dark, as evidenced of

On 01/25/2021 RMO Ince failed to make sure that the interview process for the Lead Medical Support Assistant GS-7 Vacancy Announcement Number CBSS-10968643-21BOS-AMR was fair. (Ex. 9, Report of Investigation [ROI] Bates No. 000-012).

Subsequently, Plaintiff filed a formal complaint raising two claims in a truncated manner. She writes: "Discriminated against based on my race and color"; and, "interviewed by an all

white panel." (Ex. 9, ROI 00003). She gave the time frame for the discrimination as January 1, 2021 through 1/21/21. (Ex. 9, ROI 000003) and asks for pay for two weeks as lead MSA. (Ex. 9 ROI 000003).

The Eighth Circuit Court of Appeals has held that certain claims not included in the original charge of discrimination are properly before they court where the claims are clearly "like or related to the substance of the EEOC charge." *EEOC v. Delight Wholesale Co.,* 973 F.2d 664 (8th Cir. 1992). *See also Patrick v. Henderson,* 255 F.3d 914, 915-916 (8th Cir. 2001). In determining whether an alleged discriminatory act falls within the scope of a discrimination claim, the administrative complaint must be construed liberally in order not to frustrate the remedial purposes of the anti-discrimination statutes. A plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge. *Weems v. Federated Mut. Ins. Co.,* 220 F.Supp.2d 979 (N.D. Ia. 2002).

The sweep of any subsequent judicial complaint may be as broad as the scope of the investigation. *Id.* Put another way, the jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation. *Sosa v. Hiroaka,* 920 F.2d 1451, 1456 (9th Cir. 1990). Subject matter jurisdiction extends over all allegations of discrimination that either fell within the scope of the actual investigation or an investigation "which can reasonably be expected to grow out of the charge of discrimination." *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099 (9th Cir. 2002.). Thus, when an employee seeks judicial relief for incidents not listed in his original charge, the judicial complaint may nonetheless include any discrimination like or reasonably related to the allegations of the charge. *See Weems v. Federated Mut. Ins. Co.,* 220 F.Supp.2d 979 (N.D. Ia. 2002). This is logically congruent with the

remedial purpose of the statute. Any other outcome would be illogical as the statutes require an investigation. That said, the gravamen of Plaintiff's complaint is that she was not selected for the Lead MSA position based upon her race and color. The investigation turned up multiple instances of discriminatory behavior by her supervisors that lead to her non-selection for the MSA lead. *See Plaintiff's Statements of Additional Facts.*

**2. Plaintiff Abandons Claims Based on Gender Discrimination, Harassment and Retaliation.**

Plaintiff was subjected to gender discrimination while she was working at the Linnwood (Main hospital at the KCVA) clinics. However, she did not raise that claim during the informal process and no witness statements from the ROI or gathered otherwise during the discovery period in this matter have established that the gender discrimination she experienced arose out of the matters that she did specifically raise and therefore they are abandoned. Likewise, Plaintiff expected but has not suffered any ongoing retaliatory harassment subsequent to her filing of her claims and therefore, those claims are likewise abandoned.

The facts that have been adduced in the course of the formal investigation and discovery would support a claim for harassment; however, Plaintiff did not specifically specify that as a basis in her original complaint and did not move to amend the Notice of Rights to include harassment as a basis. While Plaintiff expected the harassment to continue, once she moved away from the supervisors she had, the harassment also stopped and has not started again. Accordingly, Plaintiff would also abandon this claim at this time.

**3. Plaintiff Did Not Abandon Her Claims of Color Discrimination in Count I.**

In Count I of Plaintiff's complaint, Plaintiff incorporated the allegations found in paragraphs 1-36 of her complaint. Those allegations include the facts that support Plaintiff's

claims of discrimination based upon her dark skin tone. *See Petiton Paras. 9, 14.* The question is whether the Agency had fair notice that Plaintiff was raising claims based upon color in her lawsuit. Here, where plaintiff specifically states in the Facts Applicable to All Counts that she was basing her non-selection and disparate treatment on color and race discrimination, the defendant cannot claim to be flummoxed by the failure to state the legal axiom in Count 1. *See Loomis v. Starkville Mississippi Pub. Sch. Dist.,* 150 F.Supp.3d 730, 745 (N.D. Miss. 2015). The issue is whether plaintiff raised *factual* allegations in the complaint itself to provide fair notice to the Agency of her claim. *Id.* at 746. All of plaintiff's factual allegations are found in the Background Facts Applicable to All Counts. The Counts themselves are mere recitation of the legal elements of her claims. Plaintiff did raise the facts and therefore that basis has not been waived in Count 1.

**4. Plaintiff's Claim Survives *McDonnell Douglas* Analysis**

*McDonnell Douglas* has a three-pronged burden shifting scheme. The first prong requires a plaintiff to present a prima facia case of discrimination. To make that showing, she must show that 1) she is a member of a protected class; 2) she was meeting her employer's legitimate job expectations; 3) she suffered an adverse employment action; and 4) "similarly situated employees outside the protected class were treated differently. *Shanklin v. Fitzgerald,* 397 F.3d 596, 602 (8th Cir.) *cert denied* 546 U.S. 1066, 126 S.Ct. 807, 163 L.Ed.2d 636 (2005).

In this case, Plaintiff established that she is a member of a protected class as a dark - skinned black female. The awards she received show that she was meeting her employer's legitimate job expectations. *See Plaintiff's Statement of Additional Facts.* She was not promoted to Lead MSA which is an adverse job action. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742,

761, 118 S.Ct. 257, 141 L.Ed.2d 633 (1998)(An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significant different responsibilities or a decision causing a significant change in benefits).

The evidence Plaintiff adduced leads to the logical inference that the failure to promote was based on her race and color. For a period of time leading up to the failure to promote, Plaintiff was being treated much differently than the selectee, Victoria Malicoat. Ms. Lewis was made to cover Ms. Malicoat's duties while Ms. Malicoat was being trained to become a Lead MSA. [PSOF 50]. While this was occurring, Ms. Lewis's supervisors assured Ms. Lewis that she was the "face" of the clinics, that she was their strongest "float" and that she knew all of the clinics. [PSOF 54]. These were the qualifications that caused Ms. Lewis to lose out on the first selection for Lead MSA in the Honor Annex. In that situation, Natalie Dixon knew the Honor Annex clinics better than Plaintiff. Nonetheless, when a decision for the second Lead MSA position was to be made between Plaintiff and a less experienced and less highly educated Caucasian employee, the less qualified Caucasian was chosen.

The panel that chose Victoria Malicoat was angled in her favor. The two who actually performed the interviews were not only Caucasian, but they also had relationships with Ms. Malicoat's family. These two Caucasians were hand picked by either Ms. Groom or Ms. Ince. The entire interview process was rife with irregularities in that HR had no part of the process; Ms. Groom made the initial rankings of the resumes; Ms. Groom or Ms. Ince chose the interviewees, the interviewers, provided the interview questions, ranked the applicant's resumes and made the selection for Lead MSA.

Coupling the warping of the competitive hiring system with the fact that Ms. Lewis had observed that Lori Groom, the Chief of the department, treated Caucasians more favorably than

similarly situated African Americans, shows that Plaintiff has raised a prima facie case of race discrimination. Circumstances that give rise to an inference of discrimination include treating similarly situated employees who are not members of the protected class in a different manner. *Gibson v. A. Greetings Corp.,* 670 F.3d 844, 853 (8th Cir. 2012). Ms. Malicoat, in particular, was treated more favorably than plaintiff. Ms. Malicoat was a similarly situated employee in all respects. Both plaintiffs were MSA's, Grade 6. Both worked in the same department and had the same supervisors. They reported to the same decision-makers. *See Fields v. Shelter Mut. Ins. Co.,* 520 F.3d 859 (8th Cir. 2008) for a discussion of similarly situated. Ms. Malicoat was given special training, special privileges, and not held to the same rigor in the interview process (particularly with regard to references) as Plaintiff was. These actions raise an inference of race and color discrimination.

Defendant argues that the Agency had a legitimate and non-discriminatory reason for not selecting Lewis for the Lead Medical Support Assistant position. The Agency posits that Ms. Malicoat was better qualified than Plaintiff. That reason is demonstrably false. Ms. Lewis was more highly educated, had more experience, knew the Clinics at the main campus hospital better, knew the VETEXT system while the selectee had to be trained on it, received awards directly relevant to her position, was given awards for her courteous behavior with vets and staff alike, and covered clinics for Ms. Malicoat because Ms. Malicoat did not have the expertise to do it.

Defendant argues that Plaintiff and Ms. Malicoat had similar backgrounds. Again, that is not accurate. Ms. Lewis worked for in the Veteran's Administration at Kansas City and Leavenworth for nearly seven years while Ms. Malicoat worked in the Veteran's Administration for only two years. Ms. Lewis's jobs outside of the VA system were in medical positions from the time she graduated from University of St. Mary in 2012. (See Plaintiff's Resume, Ex. 1).

Ms. Groom, through Ms. Ince, pulled every lever to insure that a Caucasian female got the MSA Lead position in her department. She pre-selected Ms. Malicoat and insured her promotion by training Ms. Malicoat for the position while requiring Plaintiff to cover Ms. Malicoat's duties while she received that training. Then, she stacked the panel to insure that Ms. Malicoat was given the job. Stacking an interview panel with people inclined to favor a certain candidate may show pretext. *McKay v. U.S. Dept. of Trans.,* 340 F.3d 695, 700 (8th Cir. 2003). She knew that Ms. Lewis had previously been a close second in the selection of the first MSA Lead and had outscored Ms. Malicoat during the process. All of the reasons given to Plaintiff for the choice of the first selectee changed when Ms. Lewis applied for the second position. Knowledge of the clinics and experience no longer mattered. "An employer's violation of its own normal hiring procedure may be evidence of pretext." *Bass v. Bd. Of Cnty Comm'rs, Orange Cnty. Fla,* 256 F.3d 1095, 1108 (11th cir. 2001). Plaintiff has established that the reason put forward by the VA for failing to promote Ms. Lewis is pretext. Most importantly, the evidence shows that Ms. Lewis was discriminated against based on her race and color in her job and with regard to the Agency's failure to promote her.

## **CONCLUSION**

For the above and foregoing reasons, Plaintiff requests the Court to enter an order denying Defendant's Motion for Summary Judgment.

Respectfully submitted,

*/s/ Rebecca M. Randles*

REBECCA M. RANDLES MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Gladstone, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

and

HUMPHREY, FARRINGTON & McCLAIN, P.C.
Chelsea McClain Pierce #61471
Daniel A. Thomas #52030
Michael S. Kilgore #44149
221W Lexington, Suite 400
Independence, Missouri 64050
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
cmp@hfmlegal.com
dat@hfmlegal.com
msk@hfmlegal.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of November, 2023, I electronically filed a true and correct copy of this document with the Clerk of the Court for the United States District Court, Western District of Missouri, by using the federal eFiling System. Participants in the case who are registered users will be served by the federal eFiling System.

*/s/ Rebecca M. Randles*
Attorney for Plaintiff